Charles Lee WALTERS, and Nancy Jane Walters Stevens, a Minor, by Eloise Walters, Her Guardian, Plaintiffs-Respondents,

v.

Elenore C. SISLER, Evlyn A. Anderson, George R. Sisler, and James A. Sisler, Defendants-Appellants,

Walter Richard Wilcox et al., Defendants-Respondents.

No. 49796.

Supreme Court of Missouri,

Division No. 1.

Sept. 9, 1963.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 14, 1963.

Thomas F. McDonald, Henry C. Bryan, Jr., McDonald, Barnard, Wright & Timm, St. Louis, Claude Arnold, Dexter, for appellants.

C. A. Powell, Powell, Jones & Ringer, Dexter, for respondents.

HOLMAN, Judge.

This suit involves certain commercial property located in Dexter, Missouri. In the first count of their petition plaintiffs sought a decree adjudging that each is the owner of an undivided one-tenth interest in the real estate involved. In the second count they sought partition and a judgment for their portion of the rents and profits collected by certain defendants since March 16, 1959, the date of the death of Minnie B. Walters who was the grandmother of plaintiffs.

A trial resulted in a judgment to the effect that plaintiffs each own an undivided

one-tenth interest in the property; that defendants-appellants own an undivided three-fifths interest and have an additional one-fifth interest during the life of Annie Wilcox, and will own the remainder interest therein in the event Annie Wilcox shall predecease all of her children; that each of the plaintiffs should have a judgment for $1,520.50 representing their portion of the rentals, less a credit for certain taxes and insurance paid by appellants. The judgment also directed that the property be sold at partition sale. Defendants Elenore C. Sisler, Evlyn A. Anderson, George R. Sisler, and James A. Sisler have appealed from said judgment. We have jurisdiction because the case obviously involves title to real estate.

The property involved in this case was owned by John N. Miller who died testate on October 27, 1913. He was survived by his wife, Mary A. Miller, a son, Charles A. Miller, and four daughters, Dora Ulen, Annie Wilcox, Minnie Walters, and Myrtle Jones. Shortly after his death, testator's will was admitted to probate. The portion of the will primarily involved herein is the first sentence of the third article, which reads as follows: "I give, bequeath and devise to my beloved wife, Mary A. Miller the one sixth part of all the property or estate of every kind, real, personal and mixed, wherever situate of which I may die seized or possessed for and during her life with remainder to my children and heirs hereinafter named."

In the fourth article testator devised one sixth of all his property to his son, Charles A. Miller, "and to his heirs and assigns forever."

In the fifth, sixth, seventh, and eighth articles of his will, testator devised one sixth of all of his property to each of his daughters to be held in the manner therein provided. These articles are substantially the same and we quote the seventh article as illustrative of the manner in which the property was devised therein: "Seventh, I give, bequeath and devise the one sixth of all the property or estate of every kind, real, personal or mixed, wherever situate of which I may die seized or possessed to my daughter, Minnie, now the wife of Charles E. Walters, of Dexter, Missouri, as follows: the personalty absolutely and the realty to her for and during her life, with remainder to the heirs of her body."

A portion of the ninth article of the will provides as follows: "All the rest, remainder and residue of my estate if anything remains undisposed of by this will, I give, bequeath and devise to my said wife and children, in equal parts, share and share alike, upon the terms and in estate as hereinbefore mentioned and limited; provided, that whereas, I have heretofore given to my son and to each of my daughters a tract of land, and inasmuch as said tracts are not of equal value and being desirous that each of the beneficiaries of this will shall share equally in my estate, I will and direct that all the estate of which I may die seized or possessed shall be inventoried and valued by my executors, and in addition thereto, the several tracts of land heretofore given to my said children, which shall be regarded as advancements, and shall be brought into account by way of hotchpot, and the whole estate so divided that the share of each of my legatees herein shall be equal in value * * *."

The tenth article reads as follows: "It is my will that the provisions herein made for my wife and daughters shall be so construed as to vest in them and each of them, the estate and estates devised to them as a separate estate in each of them free from the control of the husbands of my said daughters or any future husband that they, or either of them might have, or of the husband of my wife should she remarry after my death."

In February 1914, the executors filed a petition in the circuit court to obtain a construction of said will. In their petition they alleged that they had made a just and equitable division of all of the real estate owned by testator (except the undivided

interests), taking also into account lands conveyed before testator's death to his children as advancements; that it was impossible to divide said real estate so that some of the portions would not be of greater value than others, and for that reason certain cash payments were to be made to Annie Wilcox and Mary A. Miller; and that the division they proposed was satisfactory to all adult defendants. Plaintiffs sought approval of the division and instructions as to the manner in which said lands should be conveyed to each devisee, and as to other matters not here material. A guardian ad litem was appointed for all minor defendants and unborn remaindermen and an answer was duly filed by him.

The court entered its decree construing the will to mean that, after division of the estate was made, the executors and adult devisees should join in making a conveyance to each of said devisees, or groups of devisees, of the part of said real estate allotted to them; and the court approved the division of the real estate as proposed by the executors in their petition. No one in this action questions the validity of the actual partitioning of testator's lands in the manner described herein.

Certain recitals in the decree tend to indicate an adjudication that the children received a vested remainder in the one-sixth interest allotted to the widow. The decree is pleaded as res adjudicata by the defendants, but we will not set out the facts in detail concerning that plea as our decision herein makes it unnecessary to deal with that point. We note, however, that the deed to that portion of the property (which includes the property here involved) describes the interest of the grantees in the following language: "Mary A. Miller for and during her life with the remainder to the undersigned Charles A. Miller, Dora Ulen, Annie Wilcox, Minnie Walters and Myrtle Jones forever."

Evidence was also admitted to the effect that in conveyances made by testator and his wife to his daughters prior to his death, the land, in each instance, was conveyed to the daughter for life, with remainder to the heirs of her body.

Dora Ulen died in 1925 and Mary A. Miller died in 1934. On June 12, 1936, Dora Ulen's husband, and all of her children and their spouses, joined with Charles A. Miller and his wife, Minnie Walters, and Myrtle Jones, in conveying the real estate involved in this action to Russell and Elenore Sisler, husband and wife, by special warranty deed. At about the same time, the Sislers obtained deeds which conveyed to them the interest of Lee E. Walters (father of plaintiffs) as the "only heir of the body of Minnie B. Walters", Ned M. Jones as the "only heir of the body of Myrtle Jones", and of Annie L. Wilcox.

In 1938, Albert H. Carter and wife obtained quitclaim deeds conveying to them the interests of Harry, Mary and Lynn Wilcox, children of Annie Wilcox, and the Carters, in turn, conveyed these interests to the Sislers on November 14, 1938. In 1954, the Sislers conveyed the property here involved, as tenants by the entirety, to themselves as tenants in common

Lee Walters, son of Minnie Walters, died December 20, 1952, leaving as his heirs his two children who are the plaintiffs in this action. Minnie Walters thereafter died on March 16, 1959. Since Lee Walters was Minnie's only child, it follows that Minnie's heirs were Lee's children, Charles Lee Walters and Nancy Jane Walters Stevens, plaintiffs herein. At the time this case was tried Annie Wilcox was the only child of testator who was still alive and she had three children living at that time, to wit, Harry, Lynn, and Mary Wilcox.

Russell Sisler died testate on November 15, 1959, and by his will, all of his property was left to his wife, Elenore, and his children, George and James Sisler and Evlyn Anderson. The Sislers have been in possession of the real estate involved in this action since 1936. Considerable evidence was offered concerning the value of the property

and the reasonable rental value thereof, together with expenditures made thereon by the Sislers, but we will not detail that evidence as the conclusion we have reached does not require a consideration thereof.

Evidence was also admitted to the effect that Russell and Elenore Sisler, as plaintiffs, filed a partition suit on May 12, 1959, naming as defendants "Harry M. Wilcox and Maxine Wilcox, his wife; Mary F. Wilcox, single; Lynn A. Wilcox and Charlotta G. Wilcox, Thomas Lynn Wilcox, Frances Ann Wilcox, Dale Robert Wilcox, Robert Arthur Wilcox, minors; Richard Wilcox, a minor; Harry Wilcox, Jr. and Rebecca Wilcox, minors; Charles Lee Walters and Eloise Walters, Guardian of Nancy Jane Stevens, a minor, and Nancy Jane Stevens, a minor, and the unknown heirs, whether in esse or unborn of the body of Annie Wilcox, and all other unknown owners of" the land here involved. That petition, which was dismissed without prejudice on August 3, 1959, alleged facts concerning the various conveyances said plaintiffs had obtained to said land, and further stated that the defendants "owned or may own, or may claim some right, title, interest or estate in, to or upon said lands."

It is apparent from the foregoing that a determination of the primary issue in this case depends upon a construction of that part of the third clause of testator's will wherein he devised to his wife Mary, one sixth of his estate "for and during her life with remainder to my children and heirs hereinafter named." Did this provision create a vested remainder in testator's children as contended by appellants, or did it indicate an intention that the interest of testator's son should vest in fee but that the interests of his daughters should be a life estate with remainder to the heirs of their bodies, as contended by plaintiffs? If the interest of Minnie Walters was only that of a life tenant, that is all that was conveyed to the Sislers by her deed of June 12, 1936, and upon her death the remainder would vest in plaintiffs as her bodily heirs.

In the construction of wills our chief object is to determine "the true intent and meaning of the testator." Section 474.430, RSMo 1959, V.A.M.S. It is our duty to give effect to the intention of the testator as gathered from an examination of the will as a whole. If, from an examination of the will, the intent is ascertainable, auxiliary rules are not to be resorted to. However, if "the language is ambiguous and the intent not clear from a consideration of the instrument as a whole and in the light of the situation and circumstances under which it was written, then recourse to such rules is permissible." Hereford v. Unknown Heirs, Etc., 365 Mo. 1048, 292 S.W.2d 289, 293.

At the time testator prepared his will his heirs were his five children. The provision we must construe specifies that the property is devised to Mary A. Miller "for and during her life with remainder to my children and heirs hereinafter named." All of the five children were thereafter named in the will and no other purported "heirs" are named therein. If the testator had omitted the words "and heirs" from the disputed provision, then unquestionably a vested remainder would have been created in his five children. Harlow v. Benning, 357 Mo. 266, 207 S.W.2d 471. It is our view that the use of the word "heirs" in said clause added nothing thereto. Under the instant circumstances the words "children" and "heirs" are synonymous. To like effect, see Heady v. Hollman, 251 Mo.Sup. 632, 158 S.W. 19. Therefore, if we were to consider only the sentence we are called upon to construe, we would readily conclude that the children were devised a vested remainder in said one-sixth interest.

Plaintiffs contend, however, that a consideration of the entire will shows that testator did not intend to give any of his real estate to his daughters in fee, but, on the contrary, intended that it be devised to them and their bodily heirs. They point to the fifth, sixth, seventh, and eighth articles in which he devised one sixth of his real estate

to each of his daughters for life with remainder to her bodily heirs. Also, they refer to the ninth article in which the residuary is devised to the wife and children "in estate as hereinbefore mentioned and limited." And further, they say that if there is any ambiguity, we should consider that conveyances made to the daughters by testator prior to his death were for life with remainder to their bodily heirs.

■■ The provisions and conveyances plaintiffs point to certainly are convincing evidence that, as a general proposition, testator believed in the concept of giving real estate to his daughters for life with remainder to their bodily heirs. However, the fact that he followed that method in some instances does not necessarily mean that he would make it an invariable rule never to convey or devise real estate to his daughters in fee. In construing this will we must take the langauge as we find it, and we cannot base our decision upon conjecture. While, as stated in the case of Shriners Hospitals For Crippled Children v. Emrie, Mo.Sup., 347 S.W.2d 198, we must ascertain the intent of the testator from the will as a whole and not merely from the provision creating the particular gift, we nevertheless have the view that the wording of the specific provision in dispute is ordinarily of much more significance than the other provisions of the will which are usually applicable in an incidental manner only.

In this case the will was apparently prepared by a skilled attorney or scrivener. In the other articles to which plaintiffs refer, he used words which unquestionably created a life estate in the daughters with remainder in their bodily heirs. If testator intended, in the third article, that the devise of real estate to his daughters should be limited to a successive life estate, why didn't the scrivener so state in plain language, as he did in the other articles of the will. He certainly knew how to write such a provision and yet, as previously indicated, we find nothing in the disputed article to indicate any intent other than to create a vested remainder in the children. To sustain plaintiffs' contention we must take the same words and arrive at the conclusion that the testator intended, by the use thereof, to create a vested remainder in the interest going to his son, but, as to the daughters, we must say that he intended to create only a life estate with remainder in their bodily heirs. The only basis for arriving at that conclusion is the fact that in other portions of the will testator devised other property to his children in that manner. We think any such conclusion is entirely unreasonable.

There are many reasons why testator could have desired to leave the property devised in the third article to his daughters in fee rather than limited to a life estate. For example, he may have considered that the real estate devised to each daughter thereunder would be only one thirtieth of his total lands and he may have deemed it wise to provide some real estate which could be readily sold in case of necessity. Also, testator may have considered the fact that any interest devised to the daughters in that article would be preceded by a life estate in his wife, and, since the period the children would have possession was thereby shortened, it may have been considered undesirable to limit the estate devised to the daughters. We do not, of course, know what was in testator's mind. The matters mentioned in this paragraph are suggested for the sole purpose of demonstrating that testator could have had a reasonable basis for intending to treat the property devised to his daughters, under article three, in a manner different from that devised to them under other articles.

Plaintiffs have cited the case of Chiles v. Bartleson, 21 Mo. 344, which in some respects is very similar to the case at bar. There the will created a life estate in testator's wife and provided that, upon her death, the property should be equally divided "between my four children." Later in the will is the provision, "Be it known to all that the bequests made to my two daughters in my above and foregoing will are made to them and the heirs of their bodies." The

court properly held that testator's intent was manifest to the effect that the land should go to his sons in fee simple and that his daughters should receive a life estate with remainder to their bodily heirs. This case does not help the plaintiffs because, in the will before us, there is no provision clearly stating that all the lands devised to the daughters therein should be for life with remainder in their bodily heirs.

 As we have indicated, we are of the opinion that the sentence in dispute clearly provides that all of the children had a vested remainder in the real estate devised thereby. However, if we assume that, when considered in connection with the remainder of the will, it is ambiguous, then our conclusion is further supported by a well-established auxiliary rule of construction. That rule is that "the law favors vested estates, so that, unless the testator has by very clear words manifested his intention to the contrary, the persons who take under his will, as the members of a designated class, must be determined at the death of the testator and the estates given them vested then. * * * One good reason for [this] rule is that testators usually have in mind the actual enjoyment rather than the technical ownership of their property. McArthur v. Scott, 113 U.S. 340, 5 S.Ct. 652, 28 L.Ed. 1015. As a result of these rules, it is generally held that, in the absence of a clear contrary indication, those who compose a class described in a will as the testator's heirs, to whom a remainder or executory interest is given, are to be ascertained at the death of the testator * * *; and that a remainder given to them thereby is vested in them at that time * * *." Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947, 950. See also the case of Uphaus v. Uphaus, Mo.Sup., 315 S.W.2d 801, and cases cited therein.

We accordingly rule that the provision in question created a vested remainder in Minnie Walters as to a one-fifth undivided interest in the property here involved and that said interest was conveyed to the Sis-

lers by her deed of June 12, 1936. It follows that plaintiffs have no interest in the property.

In view of the foregoing conclusion it is unnecessary that we consider other points briefed.

The judgment is reversed and cause remanded with directions to the trial court to enter a new judgment in accordance with the views herein expressed.

All concur.