**Corinne Anne Staigg NEAGLE, Plaintiff,**

v.

**Ruth Dalton JOHNSON, and Harvey Bailie and Lizzie Bailie, Defendants.**

**No. 65 C 394(3).**

United States District Court
E. D. Missouri, E. D.

Oct. 18, 1966.

Myron Gollub, St. Louis, Mo., Linde, Thomson, VanDyke, Fairchild & Langworthy, Charles W. Hess, Kansas City, Mo., for plaintiff.

Granville L. Gamblin, Clayton, Mo., for defendants Harvey and Lizzie Bailie.

Lyng & MacLeod, St. Louis, Mo., for defendant Johnson.

## MEMORANDUM OPINION AND ORDER

REGAN, District Judge.

Before us are motions for summary judgment filed by each of the parties. The action is primarily one to determine and quiet title, in conjunction with which plaintiff also seeks ejectment and damages. The motions are directed to the quiet title count. We have jurisdiction because of the diversity of citizenship and the amount alleged by plaintiff to be in controversy. For reasons hereafter set out, we sustain defendants' respective motions for summary judgment and deny plaintiff's motion.

The properties involved are two farms in Texas County, Missouri, one of which is owned by defendant Johnson, and the other by defendants Bailie. It appears that at one time the two farms were part of one tract of land, and defendants' titles are derived through a common source. Plaintiff claims title to the entire tract through another source, her great-grandfather John T. Russell.

▮ Defendants' motions are based, inter alia, on the asserted conclusive effect of a final judgment entered in the Circuit Court of Texas County, Missouri, on March 26, 1913, which purported to quiet title to the property in question in their predecessor in title. In that action, plaintiff's grandmother, Minnie Brown, and her greataunt, Rosa Ingles, were parties defendant who were adjudged to have no right, title or interest in the property. The major controverted question is whether this judgment is conclusive on plaintiff, although it is concededly binding upon Minnie Brown and Rosa Ingles and their privies.

Plaintiff's theory, stated simply, is that Minnie Brown was a life tenant only and that the remainder, at least as to an undivided one-half, was to go to the heirs of her body. At the time the Texas County judgment was rendered, plaintiff's mother Frances, Minnie's only child, was but 16 years of age and living with Minnie, and plaintiff was then un-

born. Neither Frances nor her unborn child was named as party defendant, their contingent remainder interest, if any, was not referred to in the pleadings, and no guardian ad litem was appointed to represent either of them. Frances predeceased Minnie, who died February 9, 1963. Based on the foregoing, plaintiff contends that the judgment concluded only Minnie's life estate and had no effect whatever on plaintiff's alleged remainder interest.

Defendants argue that even if we accept plaintiff's theory that she was a contingent remainderman whose interest vested upon the death of Minnie, the Texas County judgment nevertheless is binding upon plaintiff since the basic issue in that case was the validity vel non of the tax deed upon which Russell's title depended, and in defending that title Minnie (and Rosa) necessarily defended the interests of all who claimed thereunder. If the life tenant's title was invalid, the remainder was equally so and for identical reasons.

Viewing the matter realistically, we are impressed with the soundness of defendants' position. "The same [devise] which granted to [Minnie Brown] a life estate also granted the fee to her bodily heirs." She could not defend her right to a life estate without defending the interest of the contingent remainderman. Brown v. Bibb, 356 Mo. 148, 201 S.W.2d 370, 374. There is not the slightest intimation of any hostility on the part of Minnie toward her daughter Frances, who lived with her and who was then, on plaintiff's theory, the only living contingent remainderman. An adverse judgment in that action could not possibly be of benefit to Minnie and she had the same incentive, as a life tenant, to defend Russell's title as any contingent remainderman would have had.

Granted, in Brown v. Bibb, the then living contingent remaindermen were also joined as defendants and were represented by guardians ad litem. So, too, the possibility that unborn persons might succeed to the title was apparent from the face of the petition therein, although no explicit allegation to that effect was made. Here, Frances was not joined, except to the extent that she might have been included as an "unknown" heir or devisee of Russell, nor was any guardian ad litem appointed for her or for any other "unknown" party. And the petition was silent as to the nature or existence of any contingent remainder interest. Even so, we fail to see how plaintiff, as an unborn contingent remainderman, would have had more effective or adequate representation than she had through her grandmother. Here, unlike Brown v. Bibb, there could be no motive for the life tenant to act in a manner hostile to the interest of her bodily heirs. The matter adjudicated was, necessarily, that Russell had no valid title and hence that no one claiming under him had any valid title. On the other hand, if Russell's title was valid Minnie would have prevailed.

We have been cited to no Missouri case directly in point, and Brown v. Bibb, as we have noted, is distinguishable on its facts. Cf. White v. Campbell, 316 Mo. 949, 292 S.W. 51; Jackson v. Miller, 288 Mo. 232, 232 S.W 104; and Edwards v. Harrison, Mo., 236 S.W. 328. See also, Restatement Property, Sections 183 and 184(b). We need not, however, decide this close question by speculating as to the probable resolution thereof by a Missouri court, because of our holding infra that Minnie's interest, if any, in the Texas County property was an estate in fee simple and that plaintiff as her heir at law is her privy.[1]

---

1. However, even if plaintiff is not bound by the Texas County judgment, it would not follow that she is entitled to a summary judgment in this action. In the Texas County quiet title proceeding, the issue was the validity of Russell's title, a matter which the parties here have not briefed or argued, and which is one of the bases of plaintiff's motion. Plaintiff's motion merely assumes, but does not demonstrate, in the sense of making a showing there is no genuine issue of material fact with respect thereto, that Russell had a good title derived through a valid tax deed. It appears to us that the very fact of the prior judgment, ev-

This issue is dependent upon the proper construction to be given to the will and codicil thereto of John T. Russell. "It is agreed [2] that the will is for construction as a matter of law; there was no evidence as to the testator's intention [3] except as it may be determined from the *language* he used in his will." Buschmeyer v. Eikermann, Mo., 378 S.W.2d 468, 470. The original will was executed March 19, 1885, and the codicil was dated June 9, 1903, some 18 years later and less than a year before his death. Whatever title Russell may have had to the Texas County property was acquired subsequent to the date of the original will.

Russell had only two children, Rosa Ingles and Minnie Brown. His original will was divided into three parts, each consisting of several unnumbered paragraphs. Russell first devised to his daughter Rosa Ingles certain *specifically* described real estate in Cass County, Missouri, "To have and to hold the same to my daughter Rosa Ingles during her life for her own use and behoof and after her death to the heirs of her body and to their heirs and assigns forever."

The will then devised to his daughter Minnie certain other *specifically* described real estate in Cass County and in Jackson County, Missouri, "TO HAVE AND TO HOLD to my daughter Minnie during her life the same for her own use and behoof and after her death to the heirs of her body and to their heirs and assigns forever." [4]

In the third section of his will, Russell made provisions for his wife. Because of plaintiff's contention, we here quote this portion of the will in full (emphasis supplied),

"Third I give devise and bequeath to my beloved wife Fannie Russell excepting those portions devised and bequeathed to my daughters Rosa and Minnie *all my real estate* wheresoever situated *which I may own at the time of my death* including not only my lands in the County but also my lots and houses in Pleasant Hill Missouri. She shall have the privilege of using the land in any way. She may deem best for her own use and benefit and to sell all or any portion of them at such prices and on such terms as may be approved by my brother Harvey Russell. I give and bequeath to my beloved wife Fannie Russell all of my personal property including all the crops stock of hogs cattle and horses my bank stock in the Citizens Bank of Pleasant Hill Missouri two Cass County bonds of one hundred dollars each and all my promissory notes and cash and lastly as to all the rest residue and remainder of my personal estate boods (sic) and chattels of what kind and nature soever I give and bequeath to my beloved wife Fannie Russell.

What I have herein bequeathed and granted to my wife shall be in lieu of any dower which she might otherwise claim in and to any portion of the real estate devised and granted by me and to my daughters Rosa and Minnie.

*If either of my daughters Rosa or Minnie should die without issue or living offspring before my wifes decease the real estate which I have in*

---

en if not binding on plaintiff, tends to indicate the existence of a genuine issue of material fact, at least as to the matters adjudicated thereby, and precludes summary judgment for plaintiff.

2. In her "Suggestions in Opposition to Defendant Johnson's Motion for Allowance of Attorney's Fees"; the plaintiff says: "the plaintiff maintains that this definitely is a case for summary judgment; plaintiff knows of no genuine issue of fact not covered by the affidavits of the parties and states that this case should be decided as a matter of law."

3. As appears infra, we reject as without probative value on that issue, requirements made in 1942, 1945 and 1963 by attorneys that plaintiff join in conveyance of various other parcels of property passing under the will and the codicil.

4. Long ago Missouri abolished both the rule in Shelley's case and the common law estate tail. See present Sections 474.470 and 442.470 R.S.Mo. Russell undoubtedly wrote his will with these statutes in mind.

*this will bequeathed to her (my daughter) during her life and after her death to the heirs of her body shall go to her surviving sister whichsoever one that may be to have and to hold the same to her during her life for her own use and behoof and after her death to the heirs of her body and to their heirs and assigns forever.*

I wish my wife to have the entire use and control of all my personal effects but in making investments and lending money to consult with and have the advise and approval of my brother Harvey Russell and my friend W. H. Bohart. There will be no necessity for the appraisement of my property after my death as I desire my wife to control and use all the property both real and personal herein bequeathed by me to her as she may deem best for her own use and benefit during her life and *after her death if my two daughters Rosa Ingles and Minnie should survive her I desire that the property left by my wife should be divided equally between them."*

The codicil was executed subsequent to the death of testator's wife (the date of which has not been supplied to us) in the express belief that because of such death it was "necessary" for testator to "make a division" between his daughters both of the specifically described properties left by the will to his wife, as well as of other properties <u>acquired</u> by him subsequently, including the property in suit. It reads as follows (emphasis supplied):

"Whereas since making my last will and testament dated the 19th day of March, 1885 my beloved wife Fannie Russell has died *it becomes necessary* that *I* make a division between my daughters of the property I bequeath to her and other properties which have come into my possession since the date of the will. *It is my wish that the bequest to my daughters as set forth in the will should stand as written.*

To make *further* distribution of my property I accordingly bequeath to my daughter Rosa Ingles *and her heirs* all of my tract of land lying West of Pleasant Hill Mo. and known as the Thomas Hays farm I *also* bequeath to my daughter Rosa and *which I do not entail* the following the house and ground attached thereto where she now lives. *Also* the house in which a man by the name of Gibson now lives being lots 1–2–6 & 7 in Van Hoys Second Addition to Pleasant Hill Mo. The (house now being occupied by Mr. Lawson) *Also* lots 13–14 & 15 in Block 1 in Van Hoys Second Addition to Pleasant Hill.

*Also* the brick store building formerly used for Post Office and used for a Bowling alley and being the South half of Lot Lot 4 in Block F of Pacific R R Addition to Pleasant Hill.

*Also* a tract of land known as the Shaw property containing 22 acres (more or less) and situated between the Old and New town of Pleasant Hill. *Also* to my daughter Rosa I give $1000.00 to equalize the division I make of my Pleasant Hill real estate.

To my daughter Minnie Brown *and her heirs* I bequeath the NE ¼ of the SW ¼ of Section 1 in township 46 of Range 31 in Cass County State of Missouri and containing 40 acres more or less. *Also* the following land lying and being in Jackson County Mo. to wit: All of the East half of the Southwest quarter and S.E. ¼ of the Northwest quarter of Section 31 in township 47 of range 30 containing 120 acres more or less, *also to my daughter Minnie I give and bequeath Hartzlers Store Building* being on lot 1 and part of Lot 2 in Block 75 in Millers Addition to Pleasant Hill Mo. *Also* the little building being the South half of lot 5 in Block F Pacific Railroad Addition to Pleasant Hill Mo. *to my daughters Rosa and Minnie I bequeath jointly the following property.* The lands for which I hold deeds in Camden and Texas Counties State of Missouri. Also 39 Acres in Wyandotte County State of Kansas.

Also the Victor Oil Stock 10000 shares
The Apex Oil Stock 1250 shares

The Royal Oil and Mineral (Utah) 5000 shares
The Silver Dime Oil Company 9000 shares
The Success Oil Company 4000 shares
The Vanderlip Oil Company (In California) 5000 shares

Also 10 shares of $500. each in the Lorena Mining Company of Orango Mo.

The following property shall be equally divided between my two daughters Rosa and Minnie. The Stock in the Citizens Bank of Pleasant Hill Mo. and all solvent notes and also after the payment of all debts against my estate funeral expenses have been paid an equal division of what money I have on hand or in bank shall also be equally divided.

The Administrator shall have power to accept from the McDonald Bros. Two hundred dollars for the promissory note I hold against the Columbia Scale Company to be delivered to them without recourse unless the same is settled by me during my life time and lastly to my daughter Minnie I give and bequeath the home place where I now live and have lived for many years with all the lots adjoining and improvements thereof. *In case there is any property I possess that has been omitted or forgotten it shall be equally divided between my two daughters.* I hereby appoint my brother Harvey Russell the Administrator of my estate and that he shall not be required to give security for the performance of his duty."

Both Rosa and Minnie survived the testator. Each had heirs of the body. Minnie's only child, Frances B. Staigg, was plaintiff's mother. As we have stated, Frances predeceased Minnie, who died on February 9, 1963. The property here involved is part of that which by the codicil, Russell bequeathed "jointly" to Rosa and Minnie.

Plaintiff argues that under a proper construction of the codicil, when read together with the original will, Minnie had only a life estate jointly with Rosa, and that plaintiff was a contingent remainderman until her interest vested upon Minnie's death.

■ The paramount rule for construction of wills is to ascertain the testator's intention. "Such true intent and meaning of the testator must be determined from the entire will, and 'not from single words, passages or sentences.'" Shaw v. Wertz, Mo., 369 S.W.2d 215, 217; Farkas v. Calamia, Mo., 373 S.W.2d 1; Buschmeyer v. Eikermann, Mo., 378 S.W.2d 468; Prior v. Prior, Mo., 395 S.W.2d 438. "[A]ll parts of the will must be considered and harmonized, if it is legitimately possible to do so." Weiss v. St. Louis Union Trust Co., Mo.App., 142 S.W.2d 1103. "A will and codicil thereto are one instrument (Wells v. Fuchs, 226 Mo. 97, 125 S.W. 1137) and its meaning in the absence of any latent ambiguity, must be gathered from the words contained within its four corners." Middleton v. Dudding, Mo. (banc), 183 S.W. 443, 444.

■ The Missouri courts have developed and applied various auxiliary rules of construction in the event of ambiguity in the instrument itself, but they may be utilized only where the testator's intention is not clear from the face of the instrument. Hence, we start with the settled doctrine of Missouri courts that "All technical rules of will construction are subservient to the paramount rule that the intention of the testator shall control unless it violates an established rule of law." Commerce Trust Company v. Weed, Mo., 318 S.W.2d 289, 294.

■ The parties do not disagree as to the principles we have just stated. However, we have not been aided by the citation of any authorities which specifically bear upon the problems for decision on these motions. True, precedents are seldom of much value in construing wills, because usually each will differs in words or context from all others (Graves v. Graves, 349 Mo. 722, 163 S.W.2d 544, 547; Hereford v. Unknown Heirs, etc., 365 Mo. 1048, 292 S.W.2d 289, 293; Housman v. Lewellen, 362 Mo. 759, 244

S.W.2d 21, 23), but since our problem is one dependent for its solution upon Missouri law we must necessarily look to Missouri cases for clues and insights which will be of help in interpreting the language of the instant will and codicil.

Missouri has long had a statute, now Section 474.480, R.S.Mo.,[5] see Lemmons v. Reynolds, 170 Mo. 227, 71 S.W. 135, to the effect that every interest in real estate granted or devised to two or more persons—executors, trustees, and husband and wife excepted—"shall be a tenancy in common, unless *expressly* declared in such grant or devise to be in joint tenancy." This statute "makes it plain that a joint tenancy can be created in grantees or devisees * * * in one way only, and that is to expressly say so, by using the term 'joint tenancy.'" State ex rel. Ashauer v. Hostetter, 344 Mo. 665, 127 S.W.2d 697, 699. Although this severe application of the statute has since been softened so that "any words expressing affirmatively the intent to create a joint tenancy will suffice", see Powers v. Buckowitz, Mo., 347 S.W.2d 174, it is still necessary that the granting instrument plainly manifest the intention to create an estate with incidence of survivorship.

That portion of the codicil which specifically pertains to the property in suit states, "To my daughters Rosa and Minnie I bequeath *jointly* the following property". In this devise, Russell used the word "jointly" but did not "expressly" declare the devise to be in joint tenancy. Nor did he affirmatively express an intention to provide for the right of survivorship. Hence, we may not speculate, in the face of the statute, as to what the testator meant by the use of the word "jointly". The testator is "presumed to know and intend the legal effect of language which he uses in a will." Gehring v. Henry, Mo., 332 S.W. 2d 873, 876, 878; Shaw v. Wertz, Mo., 369 S.W.2d 215, 218. It follows that Rosa and Minnie took the property as tenants in common.

Plaintiff argues, however, that even if Minnie was a tenant in common, the interest she acquired in common with Rosa was a life estate, not a fee. Missouri has a statutory provision, now Section 474.480, upon which all parties rely. This statute provides in effect that in all devises in which the words "heirs and assigns" are omitted, and no expressions are contained in the will whereby it appears that the devise is intended to convey an estate for life only and no further devise is made of the devised premises to take effect after the death of the devisee to whom the same is given, "it shall be understood to be the intention of the testator thereby to devise" an absolute estate in fee simple. It is the intent to create a *life* estate which must *affirmatively* appear. Plaintiff is clearly in error in arguing in her reply brief (although we do not accept her premise) that "the first exception set out in Section 474.480 is applicable because there are *not* any expressions in the will whereby it appears that anything *other than* life estates were intended."

As to the property in question, the words "heirs and assigns" are omitted. Hence, unless the two statutory conditions are fulfilled, the statute applies and the result is to create an absolute estate in fee simple in the property in question. We have read the codicil in vain for any expression whereby it appears that the devise of the Texas County property jointly to the daughters was intended to convey an estate in that land to them for life only. Nor have we been able to discern a further devise of that land to take effect after the death of the daughters.

Plaintiff states her position in this manner, "The contention of the plaintiff is that as to the one-third of testator's property which he *originally devised to his wife,* the gift was to the wife for life, to his two daughters jointly for life with

5. In this opinion, we have for convenience cited and at times quoted from the most recent statutory provisions. However, the parties concede, and we agree, that the statutory language in effect at the time the will and codicil were drawn and probated were in all essential respects and meaning the same.

the remainder to the heirs of his daughters or remainder to the heirs of the body of the surviving daughter if one died childless."[6] She rejects, as "obviously not the case" the alternative construction that the division of the property "left by" the wife was to be made to the two daughters in fee.

Virtually conceding that the language of the codicil, with respect to the specific devise of the property in suit, when read apart from the original will, does not warrant the construction she advocates, plaintiff professes to discern a testamentary intent in the original will which supports her position. Her theory is that the will discloses a "plan" of distribution and that the codicil was drafted to effectuate this original plan. This may well be true, but it does not follow that the "plan" included a life estate rather than a fee for Minnie in the property in suit.

Plaintiff insists that when the introductory language of the codicil is read in the light of the language of the will an intent may be discerned to carry out the "plan" which plaintiff contends was in the testator's mind. The codicil commences with the statement that because of the death of the testator's wife "it becomes necessary" that he (the testator) "make a division" between his daughters of his various properties, not only those which he owned at the date of his will but also other properties which he acquired subsequently. Whether it was in fact "necessary" that testator make such division is debatable. Since Russell had left to his wife "all real estate" (other than that specifically devised to his daughters) which (he) may own *at the*

*time of (his) death"*, there was no apparent legal necessity for Russell to make a division of his after-acquired property (Mueller v. Buenger, 184 Mo. 458, 83 S.W. 458, 67 L.R.A. 648) any more than of the property he owned at the date of his will. So, too, since the will (by the "divided equally" clause) made provision for the disposition of the property "left by" the wife this provision would become at once operative if the wife predeceased testator. That is, unless it be held that the devise to the wife was not actually for life but was in fee simple (because of the right granted to her to use the property in any way and to sell it on prices and terms to be approved by testator's brother, considered together with the "left by" provision).[7] We need not resolve the latter question but assume, in accord with the holding of most Missouri cases involving comparable provisions, that the bequests to the wife were for life only.[8]

It would appear that testator believed that under the terms of his original will the actual division of the property "left by" his wife at her death would be made by her, and that it was for such reason he stated that it was necessary "that *I* make a division."

Plaintiff insists that "it is not what the testator says, but the important thing is what he intended to do." What plaintiff overlooks is that we can derive the testator's intention only from what he says, or as stated in Prior v. Prior, Mo., 395 S.W.2d 438, "In order to arrive at such intent, our primary guide is the will itself, considered in its entirety," or as frequently stated, "within its four corners." "Any conclusion as to what

6. Parenthetically, we here note the inconsistency of plaintiff's claim to the *whole* of the property in suit, based on the theory Minnie and Rosa were joint life tenants with right of survivorship, with her theory of testator's "plan" that the heirs of the body of the surviving daughter were to have the remainder in fee in the property "bequeathed" to the sister first dying, only if such sister died childless. Rosa, as well as Minnie, had heirs of the body.

7. Cf. Thompson v. Smith, Mo., 300 S.W. 2d 404, and Shaw v. Wertz, Mo., 369 S.W. 2d 215. To hold that the estate devised to the wife was in fee simple would destroy the basic premise upon which plaintiff bases her argument.

8. See Gent v. Thomas, 363 Mo. 528, 252 S.W.2d 345; Blumer v. Gillespie, 338 Mo. 1113, 93 S.W.2d 939; Threlkeld v. Threlkeld, 238 Mo. 459, 141 S.W. 1121.

the testator may have had in mind must be based upon the legal effect of the language used in the will itself." Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 23. How else can the court "have due regard to the directions of the will", as the Missouri statute (now Section 474.-430 R.S.Mo) requires?

Plaintiff's basic position is that by the use of the words "divided equally between", the testator intended that portion of the property "left by" the wife which she was to set aside for each daughter was not to be held in fee by them. In so arguing, plaintiff relies primarily upon the following language in the original will as demonstrating the testator's intent and "plan" to create life estates only for the daughters in *all* properties which they might acquire under any provision of the will:

"If either of my daughters Rosa or Minnie should die without issue or living offspring *before my wife's decease* the real estate which I have in this will bequeathed to her (my daughter) *during her life and after her death to the heirs of her body* shall go to her surviving sister whichsoever one that may be to have and to hold the same to her during her life for her own use and behoof and after her death to the heirs of her body and their heirs and assigns forever." (emphasis supplied).

Plaintiff minimizes as of no importance the language of this provision which makes it applicable only if a daughter should die childless "before my wife's decease", on the theory that what is of consequence is "what the testator intended in terms of his entire plan at the time he drew his will." How the plaintiff ascertained such intent while rejecting what appears to be an integral part thereof, we are not advised. Nevertheless, we agree that the foregoing provision is of importance in ascertaining the testator's intent.

Of significance is the fact that the testator very carefully limited its ap-plication to the real estate which he had *in terms* bequeathed to each daughter "during her life and after her death to the heirs of her body." By so doing, he clearly negatived an intent to make the provision applicable to *all* real estate which either daughter might acquire under the terms of the will. Plaintiff's contention begs the very question for determination. That is, if, as plaintiff argues, all property which was to go to either daughter under *any* provision of the will was to be held for life with remainder to heirs of the body, there would be no reason, and plaintiff suggests none, for testator to carefully provide for the disposition, not of *all* devises to the daughters, but *only of those which were bequeathed during the life of the daughters with remainder to heirs of their bodies.*

We further believe that the testator's intent to limit the application of this provision to those properties which the daughters were to acquire under the first and second sections of the will is further emphasized by the fact that under the language employed it is applicable only if one of the daughters should die childless "before my wife's decease". As we read the will, this language was used advisedly, and may not be excised from the provision simply because the testator's wife predeceased the daughters.

We have not overlooked the fact that the quoted provision is contained in the third section of the will, the one relating to property bequeathed to the wife, rather than immediately following the first and second portions of the will in which the bequests to the daughters for life had been made. A careful study of the will as a whole has convinced us that the testator had a definite purpose in the placement of this provision, and that it does not appear in the third section of the will as a mere parenthetical afterthought.

The paragraph immediately preceding this provision clearly states that the bequests to the wife "shall be in lieu of any dower which she might otherwise claim in and to any portion of the real

estate devised and granted by me to my two daughters Rosa and Minnie." We find here a testamentary intent to exclude the wife from having *any* interest in the real estate which the first and second sections of the will had devised to the daughters. In this connection, the testator undoubtedly considered the possibility and effect of a daughter predeceasing the wife, leaving no heirs of the body. In that situation, the wife would have acquired an interest in the real estate devised to the daughter, whether or not the daughter predeceased the testator.

Under Missouri law, absent an alternative disposition of the property by his will, Russell would have died intestate as to any property left to a daughter who predeceased him leaving no lineal descendants. In that situation, the devise to the daughter would lapse and would have been divided by the heirs at law of testator, in this instance the surviving daughter and testator's wife. So, too, if a daughter should die after the testator's death, with no lineal descendants, then her life estate would of course terminate and the remainder (the reversionary interest) would go immediately to the testator's heirs at law, in this case also, the other daughter and testator's wife. On the other hand, even if it be assumed that the residuary clause, giving to the wife *"excepting those portions devised and bequeathed to my daughters* Rosa and Minnie *all* of my real estate wheresoever situated which I may own at the time of my death", would have the effect of devising to the wife the real estate included in the lapsed devise to the daughter if she predeceased testator without descendants, (or the reversionary interest, if the daughter died after the testator leaving no descendants) then the wife would acquire, at the very least, a life estate therein.

It is obvious that the testator did not intend any such results to follow, since he did not wish his wife to have any part of or interest in the real estate left to his daughters by the first and second sections of the will. It was for such reason that the testator drafted the clause in question and inserted it in his will at the place he did.

The construction advocated by plaintiff would make wholly without meaning not only the condition that the clause apply only in the event of a daughter predeceasing the wife but also its limited application to property which had been entailed. In view of the care with which testator drafted his will, we cannot attribute to him an intent which does not appear in the language of the provision and which is directly contrary thereto. We believe that the very fact the testator carefully and meticulously made provision for entailing the property which he expressly devised to his daughters in the first and second sections of the will, but in no way limited by any language the "divided equally" provision negatives the construction urged by plaintiff. Nothing in the will itself evidences an intent to entail any properties other than those which were in terms so entailed. As to the properties left to the wife for life, there are no expressions at all from which we can derive an intent to entail them after the wife's death. The testator simply wanted them "divided equally" between the two daughters. "If testator intended, in the third article, that the devise of real estate to his daughters should be limited to a successive life estate, why didn't the scrivener so state in plain language, as he did in the other articles of the will. He certainly knew how to write such a provision * * *" Walters v. Sisler, Mo., 371 S.W.2d 187, 191.

Plaintiff lays great stress upon the testator's statement in the codicil "It is my wish that the bequest to my daughters *as set forth in the will* should stand as written." In our opinion, this statement merely expresses the testator's intent to confirm the devises made to the daughters of the *specific* properties as set forth in the first and second sections of the will. We find nothing therein which would indicate that this statement had

any reference to a remainder interest which either of the daughters might have had in the property left to the wife.

Note that immediately following the foregoing language, the following appears, "To make *further* distribution of my property I accordingly bequeath" etc. The use of the word "further" clearly demonstrates that in making the "division" of the properties left to his wife, the testator was making a distribution of property to his daughters other than "as set forth in the will." "Obviously, a codicil, being of a later date, is made with the purpose of modifying or changing in some way the effect of the testamentary disposition made in the earlier instrument, the will." First Nat. Bank of Kansas City v. University of Kansas City, Mo., 245 S.W.2d 124, 128.

Moreover, the very language used in the codicil in making the "division" is inconsistent with plaintiff's theory that the testator was simply making the same type of division of the property his wife was to make and that the property being divided was to be held for life with remainder to the heirs of the body. In making the "further distribution" of his property, the testator indicated not merely an intent to make the division equal but also an intent to create various types of estates. He first left to his daughter Rosa "and her heirs" a certain tract of land known as the Hays farm, and then left to her various other properties *"which I do not entail"*. Much of this property appears to have been in Pleasant Hill, Missouri. If, as plaintiff argues, testator had a "plan" in his will to entail *all* of the property left to the daughters and the codicil was in furtherance of this "plan", then the specific provision that some of the properties being divided "be not entailed" is utterly irreconcilable with the existence or furtherance of any such plan.

As for Minnie, the codicil first left to her "and her heirs" certain described property in Cass County and other described property in Jackson County, Mis-

souri. After so providing, the testator then bequeathed "to my daughter Minnie" (significantly omitting the words "and her heirs," just as he had done with the similar bequest to Rosa) various other properties in Pleasant Hill. In the context in which this devise was made, we believe it is clear that it was testator's intention thereby not to entail *any* of the Pleasant Hill properties.

Whether the words "and her heirs" sufficiently express an intent to entail the property in respect to which those words were used we need not decide, although it could be reasonably argued that such was the testator's intent.[9] On the other hand, the very fact that these words were omitted as to the Pleasant Hill properties confirms our belief that the testator's intention was to give these properties to Minnie in fee simple just as he gave other Pleasant Hill property to his daughter Rosa in fee simple when he provided that they were not to be entailed.

This conclusion is fortified by the fact that the testator left $1000 to Rosa in order to "equalize" the division he made of his Pleasant Hill real estate. Certainly, if Rosa was to have a fee simple title and Minnie only a life estate it is not reasonable that it would have been necessary to give the $1000 to the holder of the fee in order to "equalize" such a division. None of the Pleasant Hill properties are involved in this litigation, and we refer to the testator's disposition thereof solely to demonstrate the utter lack of substance to plaintiff's contention that the testator intended that *all* properties left to the daughters be entailed.

As to the property here in question, the testator said simply, "to my daughters Rosa and Minnie I bequeath jointly the following property." Then, after making other provisions with respect to the division of personal property "equally" between the daughters, the testator bequeathed to Minnie his "home place * * * with all the lots adjoining and improvements thereof." We fail to see

9. Cf., for example, Shaw v. Bank of Dearborn, 324 Mo. 348, 23 S.W.2d 20.

how this could be otherwise than a devise in fee of the home place. Finally, and further evidencing his lack of intention to entail any property not specifically so devised, the testator provided that "in case there is any property that I possess which has been omitted or forgotten it shall be divided equally between my two daughters."

Considering the codicil as a whole in the light of the language of the will, we fail to find the expression of an intent that any of the property "divided between" the daughters (other than possibly that which was left to a daughter "and her heirs") should be held for life only, with remainder to the heirs of the body.

■ There is no language in either the will or the codicil which evidences the testator's intent to entail any portion of his property other than that which in terms was so entailed. Plaintiff's contention to the contrary, and specifically with respect to the property in suit, rests entirely on speculation. There simply is no language whatever in the will and codicil which would evidence a "plan" on the part of the testator to make *all* the properties left to the daughters and particularly the property in suit, life estates with remainder to the heirs of the body.

In every case cited by plaintiff (none of which, admittedly, involve any comparable language), the testator's intent was ascertained from language of the will which was *specifically applicable to the devise in question*. Thus, in Hunter v. Hunter, Mo., 320 S.W.2d 529, 69 A.L.R. 2d 1048, the devise was to testator's mother and sister "as joint tenants with right of survivorship." The Missouri Supreme Court held that this explicit provision for right of survivorship clearly evidenced the testator's intent to devise a joint estate in *that* property for life with the right of survivorship. No such language appears in the devise of the Texas County property to the two daughters jointly. There was nothing mentioned as to the right of survivorship.

Again, in Armor v. Frey, 226 Mo. 646, 126 S.W. 483, the will contained a number of specific bequests to the testator's children with further provisions for the disposition of such property after their death, the character of such disposition depending on whether a child died with or without issue. The court held that the intention of the testator to create a life estate in the children in *that* property was clearly manifest from the language employed in providing specifically for a *further disposition of the property* after the death of the children. Here, there is no provision for a disposition of the Texas County property left jointly to the daughters.

The remaining case cited by plaintiff, Cox v. Jones, 229 Mo. 53, 129 S.W. 495, involved harmonizing two provisions in a will, one of which unqualifiedly devised property to the daughters of the testatrix, and another provided that the bequests made to the daughters should be to them and to the heirs of their body, but if any of them died without heirs of the body then the property so bequeathed was to revert and descend to the other heirs of testatrix. Reading both clauses together, the Court found therein an intent to create a fee tail estate which under Missouri statutes was at once struck down and a life estate to the daughter substituted therefor. The language of the will as a whole sufficiently met the conditions of the statute which denied to the general words of the granting clause an intent to create an estate in fee simple absolute. In the instant case, there is no further language which in any way evidences an intent to limit the estate to life only with a gift over.

■ The applicable rule is stated in Vaughan v. Compton, Mo., 235 S.W.2d 328, 331:

"It may be conceded that when property is devised in general terms, and without the use of any qualifying words denoting that a specific quantum

as to estate is being conveyed, that such estate may be later limited or converted to a life estate by the further use of other words or clauses implying that *of necessity* the estate granted is only for the life of devisee, with a remainder over to certain named others. Burnet v. Burnet, 244 Mo. 491, 148 S.W. 872, and cases cited. *But such a limitation over must clearly appear*, and the expressions and words used to denote such limitation over must be not only free from ambiguity but must exclude any other construction. Middleton v. Dudding, supra. The intention to create an estate subject to a condition or qualification 'must be definitely and clearly shown by the use of apt and sufficient words' not inconsistent with the other words of the instrument." (Emphasis supplied).

Plaintiff has filed various affidavits and other documents executed long after the testator's death which she claims demonstrates the intent of the testator to entail *all* properties left to the daughters. All such evidence is entirely irrelevant on the issue of the testator's intent at the time he drafted his will and codicil. Equally irrelevant is the fact, adverted to by defendants Bailie, that the Federal Land Bank made a loan to them on the assumption they had a clear title to the property. In any event, plaintiff's exhibits do not specifically relate to the property in suit.

Thus, in 1942, the purchaser of a parcel of ground which had been devised in the codicil to "Minnie *and her heirs*" required that both plaintiff and her mother, along with Minnie, sign the deed of conveyance, the transaction being held up until after plaintiff attained her 21st birthday. The purchaser, in his affidavit, stated that the requirement of all three signatures "was made by affiant in order to pass fee simple merchantable title to said land upon advice of legal counsel." If Minnie had a fee simple title, because of the devise to her "and her heirs," no signatures additional to

Minnie's were necessary to pass a good title. As we have noted, supra, it could conceivably be held that the words "and her heirs" were intended to entail the property (which of course is not the property in suit). Because of this uncertainty, it is understandable that a careful lawyer would have required the signatures of plaintiff and her mother to avoid future complications. We observe, in passing, however, that if in fact the property conveyed by the 1942 deed was entailed, the title so conveyed would not then have been "merchantable", because at that time the interests of both plaintiff and her mother were contingent, the contingency being their surviving Minnie. Plaintiff's mother predeceased Minnie, who did not die until 1963, and it is equally possible that plaintiff herself might not have survived her grandmother, in which case the purchaser's interest and "merchantable" title would have abruptly terminated.

In 1945 the signatures of plaintiff and her mother were required, along with Minnie's, in connection with a transfer of certain other property which had been *specifically entailed* by the will. In no event can it reasonably be argued that requirement of the contingent remaindermen's signatures as to such property could have any evidentiary effect whatever, other than to prove that the purchaser was taking a calculated gamble that Minnie would die first.

Finally, the fact that a quit-claim deed to certain other properties was obtained from plaintiff in 1963, after the death of her grandmother, proves no more than that a careful lawyer was protecting the interests of his client. Two of the parcels of property involved in the 1963 deed had been *entailed* by the original will, so that it was absolutely essential that plaintiff convey her interest therein if the grantee was to have *any* title. The remaining parcels of property quit-claimed by the 1963 deed were properties which (under our construction of the codicil) were left to Minnie "and her heirs".

Significantly, plaintiff has not enlightened us with respect to whether any of the many other properties specifically devised by the codicil to Minnie (or to Rosa for that matter) were conveyed during the lifetime of Minnie, and if so whether the signatures of plaintiff and her mother or both were required in connection with any such transfers. In any event, as we have held, the acts of the parties to this suit years after the testator's death are of no relevance in ascertaining the testator's intent at the time he executed the will and codicil.[10]

We repeat, there is no question but that a will should always be interpreted to carry out as far as possible the general scheme or intention of the testator as shown by the entire document. Mercantile Trust Co. v. Sowell, Mo., 359 S.W.2d 719. But it is equally true that the function of the court is to construe a will and not to write a new will under the guise of construction. Mercantile Trust Company v. Muckerman, Mo., 377 S.W.2d 355.

Contrary to the contention of plaintiff, we must take the language of the will and the codicil thereto as we find it in ascertaining the intention of the testator, and are not permitted to resort to conjecture which is not supported by the wording of the will as a whole. Walters v. Sisler, Mo., 371 S.W.2d 187, 191. In our view of the case, there is no merit whatever to plaintiff's position.

Accordingly, plaintiff's motion for summary judgment is overruled, and the separate motions of defendant Ruth Dalton Johnson, and defendants Harvey Bailie and Lizzie Bailie for summary judgment are sustained. The Clerk is ordered to enter judgment in favor of the defendants in accordance herewith, together with costs.

---

10. Even testator's own declarations as to his intentions would be inadmissible. In re Sidebottom's Estate, Mo., 327 S.W.2d 270, 278; Crist v. Nesbit, Mo.App., 352 S.W.2d 53, 56; Gehring v. Henry, Mo., 332 S.W.2d 873, 876.